IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| NOAH J. MCCOURT<br>Plaintiff,<br><br>v.<br><br>CITY OF MINNEAPOLIS, a public entity,<br>BIRD RIDES, INC., a Delaware corporation,<br>d/b/a BIRD; NEUTRON HOLDINGS, INC., a<br>Delaware corporation, d/b/a LIME | CASE NO: 19cv2717 JRT/TNL<br><br>COMPLAINT FOR DECLATORY<br>AND INJUNCTIVE RELIEF<br><br>DEMAND FOR JURY TRIAL<br><br>RECEIVED<br>OCT 16 2019<br>CLERK, U.S. DISTRICT COURT<br>MINNEAPOLIS, MINNESOTA |

## INTRODUCTION

1. This action challenges the failure of the City of Minneapolis and private companies to maintain the accessibility of the City's public sidewalks, curb ramps, crosswalks and transit stops for people with disabilities, in the face of an onslaught of unregulated dockless scooters. Private scooter companies have been allowed to appropriate the public commons for their own profit, regardless of the impact on the City's residents. Persons with mobility impairments, including people who use wheelchairs or walkers, and people with significant visual impairments are thereby being denied their right to travel freely and safely on our public walkways.

2. Without full use of the sidewalk and curb ramps at street intersections, persons with mobility and/or visual impairments have significant barriers in crossing from a pedestrian walkway to the street. This is exacerbated when the sidewalk itself is full of obstructions and no longer able to be fully and freely used by people with disabilities.

3. When dockless scooters are left in the middle of the sidewalk and other rights of way, at points of ingress and egress, they block off access to the public rights of way; furthermore, as Defendants



know, the dockless scooter riders often ride the Scooters on the sidewalk, turning the sidewalk into a vehicle highway rather than a space for safe pedestrian access and use

4. On July 26, 1990, Congress enacted the Americans With Disabilities Act (ADA), ADA §§ 2 et seq. [42 U.S.C.A. §§ 12101 et seq.], establishing the most important civil rights for persons with disabilities in our country's history, including the right to have full and equal enjoyment of services, programs, or activities of a public entity.

5. Congress explicitly stated that the purpose of the ADA was to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §12101(b)(1)-(2). Congressional statutory findings include: "historically, society has tended to isolate and segregate individuals with disabilities, and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; "discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services"; "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers"; and, "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101.

6. In the House Report accompanying the ADA, Congress expressly noted that the "employment, transportation, and public accommodation sections of [the ADA] would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets." See H.R. Rep. No. 101-485(II), at 84, reprinted in 1990 U.S.C.C.A.N. 303, 367.

7. Congress gave public entities, including state and local governments, 18 months to implement the ADA. By January 26, 1992, the effective date of the ADA, all public entities had to comply with the statutory and regulatory provisions of the ADA.

8. Nevertheless, instead of complying with the ADA, Defendants have failed to maintain and respect the public sidewalks of the City of Minneapolis in a way that allows for disabled residents to enjoy unencumbered access. People with disabilities who wish to travel in the City using the City's walkways are being forced to either put their physical safety at risk or just stay home. This is not a choice that they should have to make.

9. The Plaintiff hereby moves against the City of Minneapolis (the "Municipal Defendant"), and Neutron Holdings, Inc. a Delaware corporation doing business as Lime ("Lime"), and Bird Rides, Inc., a Delaware Corporation, Inc. d/b/a Bird ("Bird")(collectively, the "Scooter Defendants").

## VENUE AND JURISDICTION

10. The claims alleged herein arise under the Americans with Disabilities Act (42 U.S.C. §§ 12131 et seq.), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 et seq.), such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Through the same actions and omissions that form the basis of Plaintiff's federal claims, Defendants have also violated Plaintiff's rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

11. Venue over Plaintiff's claims is proper in the District of Minnesota because the Municipal Defendant resides in the District of Minnesota within the meaning of 28 U.S.C. § 1391, and because the acts, events, and omissions giving rise to Plaintiffs' claims occurred in the District of Minnesota.

## PARTIES

12. Plaintiff McCourt is a well-known advocate in the areas of mental health and disability rights. He was appointed by Minnesota Governor Mark Dayton to the Governor's Council on

Developmental Disabilities. He also serves as the Chair of the State Subcommittee on Children's Mental Health. He also serves on the Steering Committee of the Governor's Council for Diversity and Inclusion. He sits on the board of directors of both the Minnesota. Association on Children's Mental Health and Move Minnesota (previously known as Transit for Livable Communities). He also serves on the Public Policy Committees of ARC Minnesota. His expertise led him to speak before the United Nations in March of 2016. He also formerly served as a commissioner on the Chaska Human Rights Commission.

13. The Plaintiff is diagnosed with Autism Spectrum Disorder and Developmental Coordination Disorder. As a result of his diagnoses, he experiences challenges performing activities requiring the exercise of fine and gross motor skills. His reaction time is slower than an average, non-disabled person – yet, every single day, the Plaintiff finds himself dodging scooters on sidewalks and street crossings which come at him from all directions at rapid speeds without warning. The Plaintiff has also repeatedly tripped over Scooters left along the streets and sidewalks. Most recently, the Plaintiff tripped over a scooter while exiting the light rail leaving him with a large bruise on his leg. The Plaintiff is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R. § 36.104; 29 U.S.C. § 705(2)(B), and MINN. STAT. 363A

14. Defendant Neutron Holdings, Inc. d/b/a LIME ("Lime") is a for-profit corporation which rents Lime Scooters (defined below) to Lime Customers (defined below) through the Lime App (defined below). Lime is a Delaware corporation, with its principal office located at 66 Bovet Rd, Suite 320, San Mateo, California 94402

15. Defendant Bird Rides, Inc. d/b/a BIRD ("Bird") is a for-profit corporation which rents Bird Scooters (defined below) to Bird Customers (defined below) through the Bird App (defined below). Bird is a Delaware corporation, with its principal office located at 406 Broadway, #369, Santa Monica, California 90401.

16. Defendant City of Minneapolis is a public entity within the meaning of Title II of the Americans with Disabilities Act (the "ADA") and on information and belief, has received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, et seq. (the "Rehabilitation Act"). Defendant City of Minneapolis has also received federal and state financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act.

17. Defendant City of Minneapolis is a local government entity with the responsibility of providing the Plaintiff access to its public facilities, programs, services and activities. Defendant City of Minneapolis is responsible for maintaining and regulating the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways within the City of Minneapolis.

## FACTUAL ALLEGATIONS

18. The City of Minneapolis has failed to adequately maintain the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways, by allowing dockless scooters used primarily for recreational purposes to proliferate unchecked throughout Minneapolis and to block safe and equal access for people with disabilities who live in or visit the City. Defendant City of Minneapolis has thereby denied the Plaintiff the benefits of the City's services, programs, and activities based on his disability.

19. The Scooter Defendants have used and appropriated varying portions of the City's public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and walkways with impunity for their own private profit – effectively turning them into their private retail stores, showrooms, highways, and storage facilities -in abject disregard for the safety and access rights of residents or visitors with disabilities to the City of Minneapolis.

20. Bird rents electric scooters ("Bird Scooters") to its customers ("Bird Customers") through a mobile application (the "Bird App"). Travis VanderZanden, Bird's CEO, stated on or about October 9, 2018 that "[w]e don't go to New York because it's technically illegal to use a scooter at

the state level" and that "[w]here there's no laws, that's where we go in." See "Bird CEO: 'The Places Where There Are No Laws, That's Where We Go In'", Fortune, at <http://fortune.com/2018/10/09/bird-ceoscooters-laws/>, last accessed January 5, 2019 at 11:22 A.M.

21. Lime also rents electric scooters ("Lime Scooters", together with Bird Scooters and Razor Scooters, hereinafter, collectively, "Scooters") to its customers ("Lime Customers", together with Bird Customers and Razor Customers, hereinafter, collectively, "Scooter Customers") through a mobile application (the "Lime App", together with the Bird App and the Razor App, hereinafter, collectively, "Scooter Apps").

22. Scooters present obstacles and block full access and use of the sidewalk when left on the ground. Across the City of Minneapolis, idle scooters clog the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways.

23. Perhaps even more dangerous, Scooter Defendants enable or recklessly allow Scooter Customers to drive Scooters at speeds much faster than the speed of foot traffic through the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways, despite the Minnesota Vehicle Code's prohibition against operation of a motorized scooter upon the sidewalks. Effectively, the practice turns the systems of sidewalks into a Scooter highway.

24. Once a Scooter Customer is done using the Scooter, Scooter Defendants permit and/or recklessly enable the Scooter Customers to leave the Scooters anywhere the user may see fit, as part of their "dockless" business model – typically, idle Scooters end up on public property in the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, either on the ground, parked upright, or left resting sideways blocking portions of the systems of sidewalks and rights of way. Groups of Scooters may be discarded in close proximity, causing a blockade and diminishing full use of the sidewalks for pedestrians.

25. This "dockless" business practice violates Minneapolis Ordinance 95 which prohibits encroachment on "streets, alleys and public right of ways." While the City has historically

vigorously enforcing this provision against homeless individuals. It has has intentionally or recklessly overlooked the egregious actions of the Scooter Defendants and their severe negative impact on disability access.

26. To continue appropriating and re-purposing sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings in the City of Minneapolis, the Scooter Defendants hire independent contractors to tend to any Scooters with any kind of maintenance need, including battery exhaustion, before returning the Scooters to the system of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways.

27. Scooters cause barriers in paths of travel when they are operated. Scooters are operated on the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways. The Scooters are motor powered, propelling them at speeds around twenty (20) miles per hour, or more. Defendants do not require any training or education for people to ride Scooters. The combination of high relative speeds, compared to pedestrians, and lack of restrictions regarding the operator, creates hazardous conditions which causes the Plaintiff and others with disabilties, frustration, and risk of serious physical harm. The Plaintiff, should he wager trying to access the benefits of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, do so in a state of hypervigilance and stress as the concern of being struck and possibly injured by a wayward scooter persists.

28. The Scooter Defendants hinder and inhibit the Plaintiff from using the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, and have actually caused the Plaintiff to use the sidewalks less often. As in-use Scooters speed by and deny safe, equal and full access to the sidewalks, and as idle Scooters occupy, partition, and block the sidewalks and other pedestrian rights of way, the sidewalk has become inaccessible, dangerous, and much more difficult to trust as a walkway. As a result of the difficulty and frustration with the experience of attempting to use the sidewalks and other pedestrian rights of way and fear of

injury, the Plaintiff is disheartened and deterred from using the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways.

29. The Scooter Defendants' burgeoning proliferation and uncurbed growth comes at the detriment of the rights of all disabled persons with mobility and/or visual impairments who are residents and visitors of the City of Minneapolis, causing the Plaintiff injury and severe anxiety, diminishing their comfort and discriminating against them based on their disabilities by denying them access to and safe use of public walkways and other essential public services, resulting in isolation in their homes and deterioration in Plaintiff's overall quality of life.

30. The Municipal Defendant is responsible for maintaining the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, which constitute an essential government program, service, and activity for residents and visitors of the City of Minneapolis.

31. The Municipal Defendant is responsible for providing public transportation for residents and visitors to the City of Minneapolis, which constitutes an essential government program, service and activity for residents and visitors of the City of Minneapolis

32. The Municipal Defendant has further failed to maintain the system of sidewalks and rights of way in a fashion that ensures that access is not only assured to all residents and visitors with disabilities, but also that allows residents and visitors with disabilities to enjoy the full and equal benefit of the sidewalks and public rights of way.

33. Despite knowledge of Minnesota Vehicle Codes, the Scooter Defendants chose to carry out its business in the City of Minneapolis by appropriating public spaces and have allowed and continue to allow the use of the Scooters on the City's system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, declining to employ geo-fencing or other available mechanisms to ensure that Scooters are used or reasonably maintained in a way that ensures full and equal access for people with disabilities to the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways

34. The combination of the City's failure to maintain the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in compliance with the needs of disabled individuals, and the Scooter Defendants' knowing and reckless disregard for the need to maintain full and equal access to public walkways for people with disabilities, results in Plaintiffs suffering disproportionate harm based on their disabilities. The City's system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways is no longer readily accessible to and usable by persons with mobility and/or visual disabilities due to the pervasive, unregulated, and ever-growing presence of Scooters that create physical access barriers along the path of travel on the City's public walkways.

35. The Plaintiff and other persons with mobility or visual impairments must roll the dice every time they choose to use the system of sidewalks and other pedestrian rights of way, as they gamble as to whether the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways might be unfettered or instead that Plaintiffs might be blocked or themselves placed in danger by encountering Scooters strewn along their path. These obstructions deny people with disabilities access to the City's system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways and strip them of their freedom and their right to safely use the public sidewalk in the same fashion and with the same benefit as enjoyed by those without disabilities

36. The Plaintiff has mobility impairments. The Plaintiff has encountered Scooters strewn across, blocking, and/or being driven upon the system of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in the City of Minneapolis, denying him full and equal access based on disability, and, causing Plaintiff difficulty, frustration and embarrassment, and placing him in danger of injury or death. The Plaintiff continues to be deterred from leaving their homes and places of business since the invasion of these Scooters onto the streets of the City of Minneapolis.

37. The maintenance of an accessible system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways for people with disabilities go to the heart of the purpose of the ADA and other disability rights laws, and is essential for full integration into the community. The Scooter Defendants' private appropriation and exploitation of varying portions of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways turning them into inaccessible places of public accommodation for their business use - and the Municipal Defendant's failure to ensure that the system of public walkways is kept accessible to persons with mobility or visual impairments free of Scooter obstructions - discriminates based on disability in violation of multiple federal and state disability rights laws. This lawsuit seeks to ensure fair, full, and equal access to the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways for all residents and visitors with disabilities in the Minneapolis.

38. The Plaintiff brings this action to, among other things, remedy violations of Title II of the ADA, 42 U.S.C. §12131, et seq., and its accompanying regulations, Title III of the ADA, 42 U.S.C.§ 12182, et seq. and its accompanying regulations; the Rehabilitation Act and its accompanying regulations, as well as analogous state statutes MINN. STAT 363A. The Plaintiff seeks declaratory and injunctive relief pursuant to the above, as well as an award of attorneys' fees and costs under applicable law. The Plaintiff also seeks statutory damages under Minnesota law.

## FIRST CAUSE OF ACTION

### The Americans with Disabilities Act – Title II (Against Municipal Defendants)

39. The Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

40. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

41. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

42. Title II of the ADA provides in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

43. At all times relevant to this action, the Municipal Defendant was a "public entity" within the meaning of Title II of the ADA and provided and provides a program, service or activity to the general public.

44. At all times relevant to this action, the Plaintiff was a qualified individuals with disabilities within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of the City of Minneapolis. 42 U.S.C §12131.

45. Municipal Defendant is mandated to operate each program, service, or activity "so that, when, viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; see also 28 C.F.R. §§ 35.149 & 35.151. The system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways themselves constitute an essential public service, program, or activity under Title II of the ADA. 28 C.F.R. § 35.104; see Barden v. City of Sacramento, 292 F.3d 1073 (2002).

46. The regulations implementing Title II of the ADA provide that a public entity must maintain the features of all facilities required to be accessible by the ADA. 28 C.F.R. § 35.133. Facilities required to be accessible include roads, walks and passageways. 28 C.F.R. § 1035.104.

47. The Plaintiff is informed, believes and thereon alleges that the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways are not fully, equally and safely accessible to Plaintiffs when viewed in their entirety.

48. The Plaintiff is informed, believes and thereon alleges that the Municipal Defendant violated and continues to violate the ADA by failing to ensure that the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways are kept free of the Scooter obstructions and thereby deny the Plaintiff due to his disability the benefits of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways.

49. Plaintiff is informed, believes and thereon alleges that the Municipal Defendant failed and continues to fail to adopt, implement or enforce ordinances or other regulations necessary to ensure that the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways are kept free of the Scooter obstructions.

50. Plaintiff is informed, believes and thereon alleges that the Municipal Defendant and their agents and employees have and continue to violate the ADA by failing to timely respond to and remedy complaints about the said barriers through their policies and practices with regard the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways thereby denying disability access.

51. Plaintiff is informed, believes and thereon alleges that the Municipal Defendant committed the acts and omissions alleged herein with intent and/or reckless disregard of Plaintiffs' rights.

52. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continue to suffer humiliation, hardship and anxiety, due to Defendants' failure to address accommodations, modifications, services and access required for Plaintiffs' disability.

53. Municipal Defendant's discriminatory conduct is ongoing, and causing continuing harm. Plaintiffs have no adequate remedy at law and are therefore entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 12133.

54. Plaintiffs are further entitled to reasonable attorneys' fees and costs incurred in bringing this action.

## SECOND CAUSE OF ACTION

(The Rehabilitation Act) (Against Municipal Defendant)

55. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

56. Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "[N]o otherwise qualified person with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance…" 29 U.S.C. § 794.

57. The Plaintiff is otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the City of Minneapolis. See 29 U.S.C. § 794(b).

58. The Municipal Defendant is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and have received such federal assistance at all times relevant to the claims asserted in this Complaint.

59. Plaintiff is informed, believes and thereon alleges that the Municipal Defendant and their agents and employees have violated and continue to violate the Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs to discrimination in the benefits and services of the system of sidewalks, crosswalks transit stops, curb ramps, pedestrian crossings and other walkways for the reasons set forth above, based solely by reason of their disability.

60. Plaintiff is informed, believes and thereon alleges that the Municipal Defendant committed the acts and omissions alleged herein with intent and/or reckless disregard of Plaintiffs' rights.

61. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continue to suffer humiliation, hardship and anxiety, due to the Municipal Defendant's failure to address accommodations, modifications, services and access required for the Plaintiff's disabilities.

62. Municipal Defendant's discriminatory conduct is ongoing. Plaintiffs have no adequate remedy at law and are entitled to declaratory and injunctive relief set forth in 29 U.S.C. §794(a) and the Civil Rights Act of 1964, 42 U.S.C. 2000d-7(2).

63. The Plaintiff is also entitled to reasonable attorneys' fees and costs incurred in bringing this action.

### THIRD CAUSE OF ACTION

**The Americans with Disabilities Act, Title III (Against Scooter Defendants)**

64. The Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

65. Title III of the ADA provides in relevant part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a).

66. Places of public accommodation are facilities operated by a private entity including a sales or rental establishment and a place of exercise and recreation. 42 U.S.C. § 12181 (7)(E) & (I); 28 C.F.R. § 36.104.

67. Discrimination under Title III includes a failure to remove barriers to access when the removal of a barrier is readily achievable. 42 U.S.C. § 12181(2)(a)(iv).

68. The ADA's broad protection against discrimination based on disability under Title III is not limited to clients or customers of the operator of a place of public accommodation. See Molski v. Cable, Inc., 481 F. 3d 724 (9th Cir. 2007).

69. The Scooter Defendants have used and appropriated and continue to use and appropriate various portions of the City's public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossing and walkways, effectively turning them into their private retail stores, showrooms and storage facilities for their recreational dockless scooters business. The public walkways utilized by Scooter Defendants are therefore places of public accommodation covered by Title III of the ADA.

70. The Scooter Defendants have violated Title III of the ADA by discriminating against persons based on their disability as described herein and denying access to Scooter Defendants' facilities.

71. The Scooter Defendants' use and appropriation of portions of the City's public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and walkways for its business operations have created multiple barriers and hazards for Plaintiffs due to their mobility and/or visual disabilities making these walkways inaccessible to them, forcing Plaintiffs to risk their safety and well-being whenever they venture around the City and deterring them from leaving their home.

72. The removal of these barriers and hazards is readily achievable by Scooter Defendants but Defendants have failed and refused to remove or mitigate them.

73. The Plaintiffs is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 12188(a).

74. The Plaintiff is further entitled to reasonable attorneys' fees and costs incurred in bringing this action.

## FOURTH CAUSE OF ACTION

### (Violations of MINN. STAT. 363A.12) (Against Municipal Defendant)

75. The Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

76. The system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways are publicly funded service and intended for use by the public within the meaning of MINN. STAT. 363A.12

77. The Plaintiff is informed, believes and thereon alleges that the Municipal Defendant and its agents and employees have and continue to violate MINN. STAT. 363A.12. and regulations implemented pursuant thereto by operating the system of sidewalks, crosswalks, curb ramps, pedestrian crossings and other walkways in violation of disability access requirements, for the reasons set forth above.

78. The aforementioned acts and omissions of the Municipal Defendant constitute denial of equal access to and use of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways and caused the Plaintiffs to suffer deprivation of his civil rights.

79. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continues to suffer, humiliation, hardship and anxiety, due to the Municipal Defendant's failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

80. The Municipal Defendant's discriminatory conduct is ongoing. There is no adequate remedy at law, and Plaintiffs are entitled to declaratory and injunctive relief.

81. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

### FIFTH CAUSE OF ACTION

### (Violations of MINN. STAT. 363A.11) (Against Scooter Defendants)

82. The Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

83. MINN. STAT. 363A.11 states "It is an unfair discriminatory practice:(1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race, color, creed, religion, disability, national origin, marital status, sexual orientation, or sex, or for a taxicab company to discriminate in the access to, full utilization of, or benefit from service because of a person's disability."

84. The Scooter Defendants have used and appropriated and continue to use and appropriate various portions of the City's public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossing and walkways, effectively turning them into their private retail stores, showrooms and storage facilities for their recreational dockless scooters business. The public walkways utilized by Scooter Defendants are therefore places of public accommodation within the meaning of MINN. STAT 363A.11

85. The Scooter Defendants have violated MINN. STAT. 363A.11 by discriminating against persons based on their disability as described herein and denying access to Scooter Defendants' facilities.

86. The Scooter Defendants' use and appropriation of portions of the City's public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and walkways for its business

operations have created multiple barriers and hazards for Plaintiffs due to their mobility and/or visual disabilities making these walkways inaccessible to them, forcing Plaintiffs to risk their safety and well-being whenever they venture around the City and deterring them from leaving their home.

87. The removal of these barriers and hazards is readily achievable by Scooter Defendants but Defendants have failed and refused to remove or mitigate them.

88. The Plaintiffs is entitled to declaratory and injunctive relief pursuant to MINN. STAT. 363A.11

89. The Plaintiff is further entitled to reasonable attorneys' fees and costs incurred in bringing this action.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief against Defendants as Follows:

A. For an order enjoining the Scooter Defendants from continuing to operate on the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways in the City of Minneapolis;

B. For an order that this matter remain under this Court's jurisdiction until Defendants fully comply with the Orders of this Court;

D. For an order requiring disgorgement of monies wrongfully obtained as a result of the Scooter Defendants wrongful and illegal conduct;

E. For statutory damages arising from Defendants' wrongful and illegal conduct;

F. For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

G. For pre-judgment and post-judgment interest at the legal rate; and

H. For such other and further relief as the Court deems just and proper

Respectfully Submitted,                     Dated: 10/16/2019

_____

Noah J. McCourt

684 N. Otsego Street

Saint Paul, MN 55130